Filed 12/6/22  P. v. Gholar CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C093212 |
| Plaintiff and Respondent, | (Super. Ct. No. CR2020414) |
| v. | |
| TAYLOR LEWIS GHOLAR, | |
| Defendant and Appellant. | |

A jury found defendant Taylor Lewis Gholar guilty of two counts related to meeting with an underage girl for sex.  (Pen. Code, §§ 288.3, 288.4.)[1]  Defendant contends his sentence to the middle term on both counts should be vacated and the matter remanded for the trial court to impose a sentence consistent with the changes to section

---

[1] Further undesignated statutory references are to the Penal Code.

1

1170 made by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567). We shall remand for resentencing and otherwise affirm the judgment.

## BACKGROUND

A detailed statement of the background of this case is unnecessary for determination of the issues on appeal. It suffices to say that N.M., a minor, disclosed to her mother that she was receiving "weird" messages on Instagram from defendant, her former teacher. Her mother looked through N.M.'s phone and discovered messages of a sexual nature. Police were called and an officer reviewed messages where N.M. told defendant she was 12 years old and he asked if she would sneak out to have sex with him and send him nude photos. N.M.'s stepfather, pretending to be N.M., arranged a meeting with defendant. Before he left for the meeting, defendant sent N.M. an explicit photograph. When defendant arrived, he was arrested.

A jury found defendant guilty of: (1) arranging and attending a meeting with a minor in order to engage in lewd conduct (§ 288.4; count one), and (2) contacting and communicating with a minor with intent to commit a lewd and lascivious act as specified in section 288 (§ 288.3; count two). The trial court referred the matter to the probation department for a report and recommendation and set a date for sentencing.

As relevant here, the probation report stated that defendant "did not report suffering from any . . . mental health conditions" and recommended probation, citing the facts that defendant had no prior criminal record and appeared to be able to be successful in the community with appropriate supervision and counseling. The probation officer also submitted a sentencing memorandum, concluding that the factors in mitigation outweighed the factors in aggravation and recommending the lower base term if prison time were to be imposed, but continued to recommend probation. The People submitted a sentencing brief requesting the upper term.

2

Because the probation report had recommended a probationary sentence, the defense submitted a sentencing brief that touched on defendant's mental health issues and psychological trauma in the context of his ability to comply with the terms of probation. Defense counsel stated: "[Defendant] does not have any personality disorders that would make it difficult to comply with reasonable terms of probation." Counsel also noted that defendant had expressed remorse as shown in a psychological evaluation and risk assessment performed by Dr. Juliana Rohrer. Defense counsel further described various assessments administered by the probation department and Dr. Rohrer that concluded defendant had a low risk of reoffending. Letters in support were submitted with the defense's sentencing brief, some referring to his difficult family life growing up. A letter from a friend who had met defendant when they were 12 stated: "His past, [*sic*] probably one of the hardest childhoods from a person that I know personally, and he would come to my family's home nearly everyday [*sic*]."

Dr. Rohrer's evaluation assessed defendant's psychological history, diagnosis, and current risk level. In a section devoted to family history, Rohrer reported that defendant's parents separated when he was 26 (he was 27 at the time he committed the offenses at issue here). Defendant said his father was arrested and incarcerated for " 'similar charges' " and then his mother decided to separate from his father. Defendant's older brother was serving a life sentence in prison for murder; he reported that he was close to his brothers and it was difficult for him when his brother received a life sentence. He withdrew from college classes when this happened. Defendant also had another brother in prison serving a nine-year sentence.

Dr. Rohrer reported that defendant stated he was diagnosed with dyslexia and had "been given assistance for this" in college and high school. "[I]n high school he was in special education classes due to it and this was embarrassing for him." Rohrer also noted: "According to the Student Services Records Inactive Psychological Records, Mr. Gholar has a learning disability and was placed on an Individualized Education Plan

3

(IEP) while in school." According to the same source, defendant "has a basic psychological processing disorder in auditory processing, basic reading, reading comprehension, and written expression" and "suffers from migraines."

Dr. Rohrer expressed the opinion that defendant did not have a mental or personality disorder or diagnosis, but incarceration would put him in contact with inmates who did, to his detriment. Incarceration would also deny defendant the therapy he needed, including family and sex offender therapy.

At the sentencing hearing, the trial court discussed at length the factors it had considered without any mention of defendant's psychological history or mental status. The trial court noted that defendant was 29, had no criminal record, and had expressed willingness to comply with the terms of probation. However, the court concluded that "the vulnerability of the child and the position of trust of the defendant [were] controlling in terms of the Court's decision to reject probation and impose a sentence." Based on "trust and vulnerability versus no record," the court sentenced defendant to the middle term of three years on count two and imposed and stayed the middle term on count one under section 654, for an aggregate term of three years.

Defendant filed a timely appeal in December 2020. After the parties requested and received multiple extensions to the briefing schedule, the case was fully briefed and assigned to this panel in October 2022. The parties waived argument and the matter was deemed submitted on December 2, 2022.

**DISCUSSION**

When defendant was sentenced, selection of the appropriate term in a triad was "within the sound discretion of the court." (Former § 1170, subd. (b).) On January 1, 2022, while this appeal was pending, Senate Bill No. 567 became effective and amended section 1170 such that, unless contrary to the interests of justice, trial courts must impose the lower term if certain circumstances were a contributing factor in the commission of the offense, such as that the defendant "has experienced psychological, physical, or

4

childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).) In addition, trial courts have discretion to impose the lower term even if there is no evidence of these circumstances. (§ 1170, subd. (b)(7) ["Paragraph (6) does not preclude the court from imposing the lower term even if there is no evidence of those circumstances listed in paragraph (6) present"]; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1096 (*Gerson*) ["even if the trial court were to find no evidence that the circumstances listed in paragraph (6) are present, it nonetheless retains discretion to impose the lower term" (citing § 1170, subd. (b)(7)).)

These changes to section 1170 are ameliorative and therefore apply retroactively to defendant's nonfinal conviction. (*People v. Garcia* (2022) 76 Cal.App.5th 887, 902; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

Defendant contends that Senate Bill No. 567's amendment of section 1170 requires remand for resentencing based on evidence that defendant suffers from a psychological processing disorder and experienced significant learning disabilities in school.[2]

The Attorney General agrees that the amendments to section 1170, subdivision (b)(6) apply retroactively to defendant, whose case is not yet final on appeal.[3] However, he maintains remand is unwarranted because there is no reasonable indication defendant

---

[2] Defendant also asks us to consider "his youthful age at the time of the offense." However, as the Attorney General points out, section 1170, subdivision (b)(6)(B) applies the lower-term presumption only to a "youth as defined under subdivision (b) of Section 1016.7," which states that a youth is "any person under 26 years of age on the date the offense was committed."

[3] The Attorney General consistently refers to Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5) (Assembly Bill No. 124) as enacting the amended version of section 1170, subdivision (b)(6). But the amendments to this provision in Assembly Bill No. 124 were incorporated in Senate Bill No. 567. (Stats. 2021, ch. 731, § 1.3.) Senate Bill No. 567 is controlling because it was signed after Assembly Bill No. 124 and bears a higher chapter number.

5

experienced any qualifying trauma contributing to his crime. Although he agrees that the list of traumatic circumstances enumerated in the statute--i.e., "abuse, neglect, exploitation or sexual violence" (§ 1170, subd. (b)(6)(A))--is not exhaustive, he points out that it does not include a learning disability, which he argues is "markedly dissimilar" to the circumstances listed. The Attorney General also argues any psychological trauma under section 1170, subdivision (b)(6) that could be shown was not a contributing factor in defendant's crimes. The Attorney General argues there was no evidence any trauma persisted into adulthood, much less contributed to his efforts to meet with N.M.

We agree this matter should be remanded. At sentencing, the defense presented an evaluation by a psychologist intended to show that defendant was mentally stable and not a risk if granted probation. However, the evaluation disclosed, among other things, that defendant's father was incarcerated for charges similar to those for which defendant was convicted, which led his parents to separate; defendant dropped out of college when his brother was sentenced to life in prison for murder; defendant had another brother serving a significant sentence in prison; and defendant was placed in special education classes due to a learning disability. A character letter from a person who met defendant in middle school stated that he had "probably one of the hardest childhoods from a person I know." Even though Dr. Rohrer concluded that defendant did not have a serious mental illness or personality disorder, she recommended therapy.

Despite these circumstances, without the enactment of section 1170, subdivision (b)(6)(A), defendant had no incentive to develop the record further. Nor did the trial court have the benefit of the amended statute at the sentencing hearing, so that it could conduct the required analysis. When the court imposed sentence, defendant was not entitled to a presumptive lower term upon a showing that he suffered psychological trauma, which was a "contributing factor in the commission" of his offenses. (§ 1170, subd. (b)(6).) Neither defendant nor the trial court had a meaningful incentive to assess such a determination at the sentencing hearing held prior to the implementation of Senate

6

Bill No. 567.  (See *People v. Banner* (2022) 77 Cal.App.5th 226, 242 ["record is likely incomplete relative to statutory factors enacted after judgment [is] pronounced"], citing *People v. Frahs* (2020) 9 Cal.5th 618, 637-638; see also *Gerson*, *supra*, 80 Cal.App.5th at p. 1096.)  When a sentencing court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *Banner*, at p. 242.)

Further, a trial court may now depart from the lower term *only* if it finds "the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice."  (§ 1170, subd. (b)(6).)  No such finding was made here, and because the court did not consider traumatic events in defendant's history as a potential mitigating factor, we cannot be sure the finding would have been made had the amendments been in place, particularly given the probation officer's recommendation of no prison time.

On remand, the trial court may revisit all of its sentencing choices in light of the new legislation.  (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"]; *Gerson*, *supra*, 80 Cal.App.5th at p. 1096.)

We express no opinion on whether psychological trauma did in fact contribute to defendant's criminal offenses, a matter for the trial court to determine on resentencing.

## DISPOSITION

Defendant's sentence is vacated, and the case remanded to the trial court for resentencing under the amended version of section 1170, subdivision (b). The judgment is otherwise affirmed.

_/s/_
Duarte, J.

We concur:

_/s/_
Robie, Acting P.J.

_/s/_
Hull, J.